IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00962-CMA-MEH

STRIKE 3 HOLDINGS, LLC,

    Plaintiff,

v.

JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 67.174.106.86,

    Defendant.

## DEFENDANT'S MOTION TO QUASH AND BRIEF IN SUPPORT

Defendant, John Doe subscriber assigned IP address 67.174.106.86 ("Defendant"), identified as the Internet subscriber at Internet Protocol ("IP") address 67.174.106.86 on March 19, 2023 at 23:24:40 UTC, by and through the undersigned counsel, respectfully submits this Defendant's Motion to Quash and Brief in Support requesting that the Court quash the subpoena served upon Defendant's Internet Service Provider ("ISP"), Comcast Cable Communications, LLC ("Comcast") on May 2, 2023.

### Certificate of Compliance with D.C. Colo. L. Civ. R. 7.1)(a)

Pursuant to D.C.Colo.L.Civ.R.7.1(a), counsel for Defendant has conferred with Plaintiff's counsel in a good faith effort to resolve by agreement the issues raised concerning the relief Defendant seeks herein.

1

# FACTUAL BACKGROUND

1. On April 27, 2023, this Court issued an Order permitting Strike 3Holdings, LLC, a Delaware Limited Liability Company ("Plaintiff") to serve a third-party subpoena pursuant to Fed. R. Civ. P. 45 on Defendant's Internet Service Provider ("ISP") seeking personally identifying information about Defendant, including Defendant's name and address.

2. On May 2, 2023, Defendant's ISP, Comcast was served with a subpoena issued from this Court and served in Centennial, Colorado, c/o C T Corporation System, that demanded Comcast to produce to Plaintiff at Plaintiff's office in Studio City, California, the personally identifying information regarding Defendant in connection with Plaintiff's claim that Defendant allegedly unlawfully downloaded and distributed several adult motion pictures owned by Plaintiffs (the "Works") as identified with more particularity in Plaintiff's Exhibit A to the Complaint (Document #1-2).

3. Comcast provided written notice to Defendant on May 8, 2023, via USPS delivery.

4. Comcast's May 8, 2023, letter stated that Comcast would provide the requested information to Plaintiff unless the Defendant or counsel for the Defendant filed a protective motion to quash or vacate the subpoena no later than May 30, 2023, and to further inform Comcast in writing with a copy and proof of filing of such protective motion to quash or vacate the subpoena also no later than May 30, 2023. *See*, Defendant's Exhibit A to the Motion to Quash attached.

# INTRODUCTION

The present case is one of several efforts by certain media organizations to establish a business model that relies on questionable allegations of copyright infringement against a large number of individuals to generate substantial profits by extracting settlements from thousands of identified defendants.  Given the cost of defending a copyright lawsuit and the potential of large damage awards, defendants are often quick to settle for a few thousand dollars to avoid the substantial costs of litigation of the matter and/or the perceived substantial damage awards regardless of whether a defendant is innocent or guilty of the alleged copyright infringement.  Federal Courts have expressed skepticism toward this business model, including this quote from the Chief Justice of the U.S. District Court for the District of Nevada about plaintiffs that "attempt[] to create a cottage industry of filing copyright claims, making large claims for damages and then settling claims for pennies on the dollar." *Righthaven, L.L.C. v. Democratic Underground*, No. 2:11-cv-01356 (D. Nev. Apr. 14, 2011), Dkt 94.  Other Courts have been less generous, questioning "Plaintiffs who file cases with extremely weak infringement positions in order to settle for less than the cost of defense and have no intention of taking a case to trial.  Such a practice is an abuse of the judicial system and threatens the integrity of and respect for the courts." Mem. Op. and Order at 5, *Raylon, L.L.C. v. E.Z. Tag Corp.*, No. 6:09-cv-00357 (E.D. Tex. Mar. 9, 2011), Dkt. 115.

As best determined by Defendant, Plaintiff Strike 3, LLC filed in mass against well over two thousand John Doe defendants nationally in 2022 alone.[1]  Considering the thousands of John Does being sued by Plaintiff, it is highly likely that Plaintiff has no intention of pursuing an actual trial on the merits in the thousands of copyright infringement cases filed by Plaintiff Strike 3, LLC, but instead hopes to profit from settlements with small and relatively resource limited individual defendants as well as default judgments against individual defendants who are unsure of how to, or feel they are financially unable to, defend themselves through the full course of a copyright infringement trial.[2]  It is likely that the goal of Plaintiff is to obtain ISP subscriber information for the public IP addresses recorded by the ISPs, issue settlement demands to the maximum amount they can obtain without going to trial, and eventually dismiss the cases after extracting whatever bounty they can obtain without actually going to a trial on the merits.  This for-profit business model becomes more obvious when one considers the history of mass copyright infringement lawsuits by copyright content owners similar to the Plaintiff in the subject case, which show the overwhelming majority of defendants are never named and served with a summons.  Consider, for example, on February 24, 2012, Prenda Law Inc., a prominent copyright infringement law firm in the U.S., stated the following.

> "Although our records indicate that we have filed suits against individual copyright infringement defendants, our records indicate no defendants have been served in the below listed cases." *AF Holdings LLC, v. Does 1-135*, case 5:11-cv-

---

[1] Van der Sar, Ernesto, *'Strike 3' Filed a Record Number of Piracy Lawsuits This Year*, TorrentFreak, TF Publishing, December 27, 2022, https://torrentfreak.com/strike-3-filed-a-record-number-of-piracy-lawsuits-this-year-221227/: asserting "Strike 3 Holdings filed a record-breaking 2,788+ lawsuits against alleged BitTorrent pirates in U.S. courts this year." *See also*, Defendant's Exhibit A.

[2] Id., asserting "Due to the costs involved, it's rare for accused pirates to fight back and then secure a win, but when Strike 3 filed a lawsuit against a 'John Doe' who turned out to be a 70+-year-old retired police officer, the tables were turned.  Another 'Doe' is putting up a spirited fight in a separate case, one that's currently heading to trial.  If that goes ahead, it will only be the second time that's ever happened."

03336-LHK (NDCA), Document 43 (Declaration of Charles Piehl), Exhibit A, section 9.

As described in the subject Complaint of the Plaintiff (Document #1, Complaint, ¶52), Plaintiff here appears to be seeking to take advantage of the threat of an award of statutory damages, attorneys' fees, ignorance about copyright law, and the stigma associated with accessing copyrighted material via the internet to extract quick and profitable settlements. Notably, in accord with 17 U.S.C. § 504(a) & (c), for the 100 claimed infringements of the Works in this case, Plaintiff would therefore be attempting to seek a minimum of $75,000 up to well into the millions of dollars from an individual Defendant that is a near certain threat of immediate bankruptcy for nearly all of the defendants, including this Defendant, of Plaintiff Strike 3, LLC. This threat is certainly a chilling prospect to all but the most financially secure citizens of the country and is certainly being used as a cudgel by Plaintiff to extract as much money as possible rather than to seek actual damages from the downloads of defendants and the profits of defendants from defendants' participation in BitTorrents, which such profits are likely zero dollars as the BitTorrent model rarely, if ever, pays individuals downloading files for the comingled distribution of portions of the downloaded BitTorrent files such that the general defendants of Plaintiff are rarely, if ever, profit seeking competitors of Plaintiff where such statutory damages may be appropriate.

This Court has specifically and directly condemned for-profit copyright litigation models against individuals. *Righthaven, L.L.C. v. Hill*, No. 1:11-cv-00211 (D. Colo. Apr. 7, 2011) (J. Kane), Dkt. 16 ("Plaintiff's wishes to the contrary, the courts are not merely tools for encouraging and exacting settlements from Defendants cowed by the potential costs of litigation and liability.") Although Plaintiff does not rely on the same business model as the Righthaven

5

model, Plaintiff does appear to seek to exact settlements from numerous defendants sued in a John Doe capacity in an amount to which mounting a defense in court is less economically efficient than settling out of court. Moreover, because of the subject matter involved, the unique prospect of so many defendants with nearly identical cases pending before the Court, and massive potential liabilities, that, if Plaintiff's joint and several liability theories are to be credibly believed, could result in excess of several million dollars based solely on questionable allegations of what can only be described as, at best, *de minimis* acts considering the damages sought (i.e., the viewing of a hundred adult motion pictures).

As might be expected, some Doe defendants, fearing the massive life-altering damages, or perhaps in an effort to avoid the embarrassment or professional and/or personal ruin that might accompany a public accusation of copyright infringement, could elect to quickly and anonymously acquiesce to Plaintiff's coercive demands even if a Doe defendant is innocent. Such a scenario has already been explored by various Courts. In denying a motion for early discovery based solely on BitTorrent IP addresses identical to this case, Judge Baker astutely asked:

> "Could [] discovery be used to wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether [Plaintiff] has competent evidence to prove its case."

*VPR Internationale v. Does 1-1017*, 2011 U.S. Dist. LEXIS 64656, 5-6 (C.D. Ill. Apr. 29, 2011).

In light of the aforementioned authority, in its following argument, Defendant requests that the Court quash Plaintiff's subpoena.

Plaintiff's subpoena is invalid on its face. The technology and methods utilized to identify potential Defendants are highly unreliable, leading to a significant risk of

misidentification. The technology used by Plaintiffs fails to consider important factors such as persons masking false Internet Protocol ("IP") addresses, persons with hacked or open wireless networks, or computers that have been hacked by others and able to be controlled remotely. Rather, Plaintiff's technology involves use and monitoring of the BitTorrent network to identify and collect United States IP addresses that are allegedly downloading the content and sending those IP addresses to be added to a John Doe lawsuit for copyright infringement. Plaintiff's subpoena also impermissibly subjects Defendant to unwarranted annoyance and embarrassment. Accordingly, the present subpoena must be quashed to avoid considerable injustice.

## LEGAL STANDARDS

### 1. AUTHORITY TO QUASH SUBPOENAS

Pursuant to Fed. R. Civ. Pro. 45(d)(3)(A)(iii) & (iv), a Court must modify or quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a person to an undue burden." A court may modify or quash a subpoena that, inter alia, requires disclosing confidential information.

Moreover, Fed. R. Civ. Pro. 26(c)(1), instructs that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

### 2. STANDING

A party has standing to challenge a subpoena issued to a third party when the party has a personal or proprietary interest in the information sought by the subpoena. *See Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 21 (Dist. D.C., 2005).

## ARGUMENT

### I. PLAINTIFF'S SUBPOENA MUST BE QUASHED

#### A. Defendant has Standing to Challenge the Subpoena Because Defendant Has a Personal Interest in the Subpoenaed Matter

Here, because the subpoena issued to Comcast seeks Defendant's personally identifying information, Defendant undoubtedly has a "personal interest" in the information sought by the subpoena. Further, if Defendant's name is turned over by Comcast, Plaintiff, as part of their business model will quickly seek one or more settlements that will likely amount to thousands of dollars each, with no serious intention of taking a case to trial. If an identified Doe has a "personal or proprietary interest" sufficient to pay several thousand dollars under the threat of litigation and public exposure, certainly Defendant has a "personal or proprietary interest" sufficient to object prior to that disclosure. Accordingly, Defendant has standing to challenge the subpoena.

#### B. Plaintiff's Subpoena Must be Quashed on the Basis of the Lack of Reliability relating to IP Address Tracking Technology

Plaintiff's subpoena must be quashed because the technology used to identify individual Defendants for the alleged copyright infringement is unreliable and is insufficient to show a volitional act of copyright infringement. Mere identification of an originating IP address is unreliable because the IP address does not also identify the associated computer's Media Access Control (MAC) address that could be tied to an individual computer. An IP address can name an entire network of computers, so without the MAC address, an IP address alone is not sufficient to identify an individual accused of copyright infringement. Most ISPs do not store MAC address data, nor do they have the ability to detect falsified or altered MAC addresses. Further, there is

software available that is capable of impersonating and/or falsifying an IP address and/or a MAC address such that an identified IP address, or even the further identification of a MAC address, is not associated with the actual copyright infringer in any manner.

Plaintiff claims (Document #1, Complaint, ¶¶ 19, 22, 25, 26, 28-30, 37, 43, and 44) that Defendant as identified merely by a public IP address 67.174.106.86 had to take active steps to install the BitTorrent software on his computer(s) and improperly download and/or upload Plaintiff's Works, with the specific accusation that Defendant "downloaded, copied, and distributed Plaintiff's Works without authorization" and that such "infringement was continuous and ongoing" (Document #1, Complaint, ¶¶ 43 and 44). Plaintiff omits to fully inform the Court that the public IP address Plaintiff's "VSN Scan" technology recorded does not necessarily correlate to the BitTorrent software being installed on any computer belonging to Defendant John Doe. The public IP address Plaintiff provided the court only correlates to the immediate location of the Internet service connection and who pays the ISP. This is due to the circumstance that a majority of homes and small businesses today use a Wireless Firewall/Router ("WFR") to share the Internet connection to computers and other devices at the Internet service location. The WFR allows multiple wired and wireless connections from computers and other Internet capable devices (some possibly unauthorized); all using the same public IP address Plaintiff has collected. As the wireless signal of the WFR commonly extends outside the residence, it is not unusual for unauthorized systems to connect to the WFR. Some ISP subscribers (such as the Defendant John Doe of the subject case) may have operated their wireless Internet connection in an "open" configuration (i.e., no password required to connect), so anyone could have connected to the WFR and downloaded Plaintiff's Work, and/or used weak protection that could easily be

broken by unauthorized users. Possible claims of negligence on the part of Defendant in not securing an Internet connection or by not monitoring what occurs on the Internet connection would be baseless since there is no legal duty or contractual obligation between Defendant and Plaintiff to require such action. Even if an ISP subscriber secures the wireless Internet connection with a strong password, there are various vulnerabilities that could still be exploited to gain access to the WFR.

The WFR provides each system connected to it an "internal" IP address that no one outside the WFR network will ever see. The unauthorized use of an Internet connection is sometimes unwittingly done by a neighbor, but has also been done by malicious third-parties wishing to avoid detection of illegal activity or to implicate the Internet subscriber in a crime. Due to the technical nature of the WFR, most users set up the WFR device and never touch it again unless there is a problem. Most users will never know their Internet connection was illegally used by third parties unless they receive some outside notification. One such common notification is the Digital Millennium Copyright Act (DMCA) take-down notice from a copyright content owner. Notably, Plaintiff did not issue a DMCA take-down notice to Comcast and Defendant (i.e., the Comcast subscriber). Due to the very limited network logging ability of most WFR devices, by the time the ISP notifies the Internet subscriber of a legal action (such as in the subject case), any WFR device logs showing possible third-party users are typically long gone. If DMCA take-down notices were immediately issued to the ISPs and the ISP subscribers, there is a better chance of the WFR devices having relevant logs.

As an example, two 2011 Federal court filings from defendants in a similar California copyright infringement case (3:11-cv-02766-MEJ, Northern District of CA, *Patrick Collins v.*

10

*Does 1-2590*, Documents 22 and 52), show how weak the Public IP address is in identifying the actual copyright infringers.

In document #22 (3:11-cv-02766-MEJ), Bobbie Thomas of Richmond, CA and an ISP subscriber tells the court she is a disabled female who lives with her adult daughter and several in home care providers. The residence (location of the Public IP address) is a three-story building in which her daughter runs a child day care business for 12-hours a day. In the first floor common area, Mrs. Thomas' personal computer and Internet connection were open and available for any of the residents or anyone with access to use.

In document #52 (3:11-cv-02766-MEJ), Steve Buchanan of Phoenix, AZ and an ISP subscriber, tells the court that unknown personnel were abusing his Internet connection and his ISP had to help him re-secure his WFR. Mr. Buchanan enlisted the help of his ISP after receiving notification from his ISP that copyright protected movies were being shared via his public IP address. Mr. Buchanan eventually secured his WFR and determined that unknown personnel had also illegally accessed his wife's computer and prevented it from connecting to his network.

A few other potential scenarios of why the ISP subscriber may not have illegally downloaded/shared a copyrighted work include, but are not limited to:

    a. The WFR Internet access point is operated in an open configuration and abused by an unknown person.

    b. A guest at the residence abuses the Internet connection without the knowledge of the owner.

      c. A neighbor connects (knowingly or unknowingly) to the WFR network and without the knowledge of the owner.

      d. The subject public IP address is part of a group residence (i.e., roommates), apartment building, or small home business where a user unbeknownst to the ISP subscriber downloaded/shared copyright protected work.

      e. An attached computer system/device is infected by a computer virus and/or malware and is subsequently controlled by an unknown person.

      f. An unknown person hacks the WFR device security settings and abuses the Internet connection of the ISP subscriber.[3]

Without additional investigative steps, innocent people are bound to be implicated in infringement activity and pressured to pay a settlement to make the threat of a Federal lawsuit go away.

      Where an ISP records a MAC address for a subscriber, the MAC address the ISPs have on record for an ISP subscriber is a type of serial number found on devices with computer networking capability. Common networking enabled devices include computers, smart phones, video game systems, televisions, and DVD players. Many ISPs use the MAC address as a screening filter to limit access to their network to only the paying customers. Depending on the specific ISP, the MAC address recorded may be for the Internet connection modem (e.g., cable modem), or possibly the first network enabled device connected to the modem. If an Internet

---

[3] WiFi Protected Setup (WPS) PIN brute force vulnerability, Vulnerability Note VU#723755, December 27, 2011: http://www.kb.cert.org/vuls/id/723755. *See also*, Defendant's Exhibit A.

subscriber only has one computer connected directly to the Internet connection modem, then the ISP may record the MAC address for this device. However, as described above, it is common today for personnel to first connect a WFR into the Internet connection modem such that the MAC address recorded by the ISP may be for the WFR device and not for the computing device that is actually performing the upload/download activity. Accordingly, none of the MAC addresses for the internal devices connected to the WFR (wired or wireless) are seen or recorded by the ISP or anyone else outside of the home network. As previously stated, the logging ability of the WFR may be very limited and since the Plaintiff waited so long to file this case, relevant logs are likely gone.

Because the technology used by Plaintiff (i.e., mere identification of a public IP address) to identify Defendant is highly unreliable, Plaintiff is incapable of accurately identifying the proper individuals who actually downloaded the infringing material, and/or from where the material was actually downloaded. Because IP addresses are the **only** evidence Plaintiff has to identify Defendant, Plaintiff's subpoena is unreliable on its face and should be quashed by the Court given the evidence Plaintiff has provided thus far.

Moreover, to prove a claim for infringement, a Plaintiff must demonstrate that the Defendant copied the protected work. *Kelly v. Ariba Soft Corp.*, 336 F.3d 811, 817 (9th Cir. 2003) ("the Plaintiff must show ownership of the copyright and copying by the Defendant."), and that the copying was a result of a volitional act. *See Religious Tech Ctr. v. Netcom On-Line Commn'n Servs., Inc.*, 907 F. Supp 1361, 1369-1370 (N.D. Cal. 1995). However, Plaintiff's allegations are highly suspect and do not, and cannot account for numerous issues, including unsecured wireless networks, fraudulently broadcasted IP addresses, computer hacking, and

more. Courts again have touched on this simple yet very logical assertion, that an IP address does not necessarily constitute a copyright infringer. Again, the *VPR* Court correctly identified this factual and legal point, observing that:

> "[Plaintiff] ignores the fact that IP subscribers are not necessarily copyright infringers. Carolyn Thompson writes in an MSNBC article of a raid by federal agents on a home that was linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid. Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' WiFi connections (including a secure connection from the State University New York)." *VPR Internationale v. Does 1-1,017*, No. 2:11-cv-02068, (C.D. Ill. Apr. 29, 2011), Dkt. 15, 2011 U.S. Dist. LEXIS 64656, at 3-4.

However, as noted by Judge Baker, "whether you're guilty or not, you look like a suspect." *Id.* at 5. (internal citations omitted).

Additionally, Plaintiff also has the ability to pursue the Defendants in a much less intrusive manner than their current dragnet approach. Prospective Plaintiffs can file through the various ISPs notices of infringement, wherein the ISP relays via email the notice of infringement to the prospective Defendant. Plaintiffs can then attempt to settle with Defendants in a manner less expensive for all parties. If the potential Defendants fail to comply with Plaintiffs requests for settlement, Plaintiffs can then choose to sue the individuals who fail to comply. This method employed by other copyright enforcement groups creates much less of a dragnet, allows potential Defendants to remain anonymous, reduces costs to all parties, preserves precious judicial resources, and allows Plaintiffs to more efficiently identify Defendants and settle without resorting to numerous Federal lawsuits.

Based on the technological ease with which innocent individuals can be falsely identified, the information in the subpoena should be viewed with skepticism. For example, when a neighbor, unbeknownst to the subscriber, illegally enables a BitTorrent client downloading copyrighted material either remotely on the user's computer or through an open wireless internet connection on the user's network, an Internet subscriber can unknowingly be identified and caught up in the dragnet.

In the present circumstances, Defendant lives in an apartment residence where all guests to the residence had access to the Internet connection registered in the name of Defendant. Moreover, as described above, there are several ways for an entirely unknown user to access even a password secured WFR device, particularly in an apartment residence setting where there are numerous potential unauthorized users with easy and persistent access to the WFR within short distances on all sides as well as above and below the WFR. Finally, there is an alternative method of copyright enforcement that Plaintiff could utilize which is less expensive than the current means relied on by Plaintiff's broad sweeping approach. Coupled with the devastating effect of a false accusation of infringement of copyrighted materials, Plaintiff's allegations fail to provide sufficient accuracy, nor an actual volitional act associated to Defendant sufficient to support its claim, and Plaintiff's subpoena should be quashed in so far as Defendant is solely identified by a public IP address.

**C. Plaintiff's Subpoena Must be Quashed on the Basis that the Subpoena Seeks Information Relating to Innocent Individuals**

As described in more detail above, Plaintiff's Subpoena improperly seeks information relating to public IP addresses of individuals that potentially have nothing to do with any

infringement activities. Plaintiff improperly suggests that Defendant is tied uniquely to a specific IP address. (Document #1, Complaint ¶ 43). This is not the case.

As also described in more detail above, a public IP address can only identify a subscriber to an ISP; it does not identify the specific identity of the person that actually engaged in the infringing activities. To successfully identify the infringer, Plaintiff would need extensive additional information that cannot be gleaned from information requested by the Subpoena. Indeed, Plaintiff's inaccurate portrayal of the facts required to identify infringers was exposed in *Boy Racer, Inc. v. Doe*, 2011 U.S. Dist. LEXIS 103550 (N.D. Cal. Sept. 13, 2011). After issuing a substantially identical subpoena and representing to the court that each IP address corresponds to a defendant, the plaintiff there was forced to admit that this information was legally insufficient, and is really just the starting point for a far more invasive investigation. In rejecting that plaintiff's attempt to expand its discovery beyond its initial representations, the court quoted the key admissions in the plaintiff's argument are as follows:

> "'While Plaintiff has the identifying information of the subscriber, this does not tell Plaintiff who illegally downloaded Plaintiff's works, or, therefore, who Plaintiff will name as the Defendant in this case. It could be the Subscriber, or another member of his household, or any number of other individuals who had direct access to Subscribers network."

As a result,

> "Plaintiff plans to request a limited inspection of Subscriber's electronically stored information and tangible things, such as Subscriber's computer and the computers of those sharing his Internet network, for the purpose of finding the individual that unlawfully violated Plaintiff's copyrighted works by uploading/downloading the file referenced BitTorrent, or to see whether such information has since been erased contrary to instructions by Verizon Online and Plaintiff's attorneys."

*Id.* at 6-7 (rejecting plaintiff's discovery requests because "[p]resumably, every desktop, laptop, smartphone, and tablet in the subscriber's residence, and perhaps any residence of any neighbor, houseguest or other sharing his internet access, would be fair game") (internal quotation marks and citations omitted). Thus, granting Plaintiff the form of relief that it seeks would impermissibly allow Plaintiff to subpoena ISPs to obtain the detailed personal information of unknown numbers of innocent individuals that Plaintiff could never make party to this suit and subject them to onerous, invasive discovery and/or unfair settlement tactics. *Pacific Century Int'l Ltd. v. Does 1-101*, No. C-11-02533, 2011 U.S. Dist. LEXIS 124518, *6 (N.D. Cal. Oct. 27, 2011).

### D. Plaintiff's Subpoena Must be Quashed to Protect Defendant from Unreasonable Annoyance and Public Embarrassment

The Court must quash the present subpoena against Defendant to protect Defendant from suffering unwarranted annoyance, embarrassment, and an undue burden. Fed. R. Civ. Pro. 26(c)(1). Presently, Plaintiff requires Defendant's confidential personally identifying information from Defendant's ISP so that Plaintiff can harass Defendant into coercing a quick and profitable settlement under the guise of publicly outing Defendant regarding an accusation of an unlawful download of copyrighted material, despite questionable proof against Defendant.

Plaintiff's subpoena is intended to cause an undue annoyance, embarrassment, and hardship to Defendant, and the same would result if Defendant's personally identifying information were associated without sufficient evidentiary support with the unlawful downloading of copyrighted materials. Such association would be highly embarrassing to Defendant, unjustifiably stigmatizing to Defendant, injurious of Defendant's character and reputation, and potentially jeopardizing to Defendant's employment. Moreover, even were

17

Defendant to demonstrate that Plaintiff's allegations are false, the embarrassment and reputational damage from Plaintiff's false public claim will persist because of the public record. However, by quashing Plaintiff's subpoena, the Court can prevent the injustice of having Defendant unjustly harmed and embarrassed by questionable and premature accusations of illegally downloading copyrighted materials. Given the present facts, the subpoena should be quashed.

## CONCLUSION

WHEREFORE, Defendant respectfully requests that the Court enter an Order quashing the May 2, 2023, *subpoena duces tecum* issued to Comcast as applied to Defendant John Doe as identified solely by Internet Protocol (IP) address 67.174.106.86 that has a significant possibility of misidentifying the intended Defendant in Plaintiff's action. A proposed order is attached for the Court's convenience.

Dated this 30th day of May, 2023

        Respectfully submitted,

    By:   /s/ *Christopher P. Whitham*
           Christopher P. Whitham

           COCHRAN FREUND & YOUNG LLC
           2026 Caribou Drive, Suite 201
           Fort Collins, CO 80525
           (970) 492-1100
           Fax: (970) 492-1101
           chrisw@patentlegal.com
           *Attorney for Defendant John Doe subscriber assigned IP address 67.174.106.86*

# CERTIFICATE OF SERVICE

I hereby certify that on May 30th, 2023, a true and correct copy of the foregoing **DEFENDANT'S MOTION TO QUASH AND BRIEF IN SUPPORT** was filed via the CM/ECF filing system which will send notification of such filing to the following:

Jessica Fernandez, Esq.
Associate In-House Counsel
General Media Systems, LLC
11271 Ventura Blvd, #717
Studio City, CA 91604
*Attorney(s) for Plaintiff*

Dated this 30th day of May, 2023

By:    /s/ *Christopher P. Whitham*
       Christopher P. Whitham

       COCHRAN FREUND & YOUNG LLC
       2026 Caribou Drive, Suite 201
       Fort Collins, CO 80525
       (970) 492-1100
       Fax: (970) 492-1101
       chrisw@patentlegal.com
       *Attorney for Defendant John Doe subscriber assigned IP address 67.174.106.86*